UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRENDA K. McLEAN,          )
                                   )
             Plaintiff    )
                                   )
          vs.          )       CAUSE NO. 3:05-CV-120 RM
                                   )
THE SOUTH BEND CLINIC,    )
d/b/a FAMILY CARE ASSOCIATES,    )
                                   )
            Defendant    )

## OPINION AND ORDER

This cause is before the court on the The South Bend Clinic's motion for summary judgment on Brenda McLean's claims against it. Ms. McLean claims that while she was employed at Family Care Associates she suffered sexual discrimination and harassment and was the victim of retaliation in violation of 42 U.S.C. § 2000(e) *et seq.* She further claims upon her discharge, she didn't receive earned pay for vacation/personal time. For the reasons that follow, the court grants the Clinic's summary judgment motion.

## FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Ms. McLean as is reasonable. Ms. McLean became employed at Family Care Associates in September 1991 and worked there as a nurse, primarily under Dr. James Blechl's supervision, until her discharge in July

2004. The South Bend Clinic acquired Family Care Associates in January 1998. The parties agree the acquisition didn't result in any significant changes to the operation of Family Care.

Michelle Arwood was hired as Family Care's Practice Manager in 2000. Ms. McLean alleges that after Ms. Arwood arrived at Family Care, she (Ms. McLean) began to observe inappropriate conduct between Ms. Arwood and Dr. Blechl and became convinced that Dr. Blechl and Ms. Arwood were involved in an extramarital affair. Ms. McLean alleges another employee confirmed her suspicions.

Ms. McLean claims she made her disapproval of the affair known to Dr. Blechl and Ms. Arwood, and Dr. Blechl and Ms. Arwood then began to harass, intimidate, and retaliate against her in the following particulars. Ms. McLean claims Dr. Blechl described to her, using a sexually provocative tone of voice, a bike ride he intended to take, a conversation Ms. McLean interpreted as an invitation by Dr. Blechl to have sex with him; Dr. Blechl sometimes leaned over her at her computer and put his hand over hers; and Dr. Blechl verbally abused her on more than one occasion. Ms. McLean says that when she told Dr. Blechl he was making her feel uncomfortable and asked that he not use her computer, he "found opportunities to run his hand down [her] arm and whisper in her ear, "It'll only take a minute," patently referring to an act of sexual intercourse." Compl., ¶ 22.

Ms. McLean alleges that after she expressed her disapproval of the Blechl-Arwood affair, Ms. Arwood engaged in the following behavior: Ms. Arwood often

shook her hair over Ms. McLean's desk; Ms. Arwood touched Ms. McLean's hand and arm and petted Ms. McLean's hair; and Ms. Arwood often came to Ms. McLean's work area asked Ms. McLean, "How's it going back here?" Ms. McLean says Ms. Arwood also said that it was Ms. McLean's job to "accommodate" Dr. Blechl, which Ms. McLean interpreted as an invitation to join them in their affair. Ms. McLean says she asked Ms. Arwood to leave her alone and complained to Dr. Blechl about Ms. Arwood's conduct to no avail.

On June 28, 2004, Dr. Blechl learned from Bernadette Tomkiewicz, one of his patients, that during a recent visit to Family Care Ms. McLean told her that Dr. Blechl was having an affair with Ms. Arwood. Dr. Blechl conferred with Luanne Goble, the Clinic's Senior Director of Human Resources, and then asked Ms. Tomkiewicz to memorialize in writing her conversation with Ms. McLean. Ms. Tomkiewicz complied with that request.

Ms. McLean returned from vacation the following week and was asked to meet with Ms. Goble, Dr. Blechl, and Ms. Arwood. Ms. Goble redacted Ms. Tomkiewicz's name and signature from her written statement and showed the statement to Ms. McLean. Ms. McLean didn't respond to the accusation that she had talked about the alleged affair to a Clinic patient. Ms. McLean, though, did inform Ms. Goble that she knew there was an affair taking place between Dr. Blechl and Ms. Arwood and she was glad the affair was out in the open so Family Care would deal with the situation. Ms. Goble made the decision to terminate Ms. McLean's employment based on her behavior's inappropriateness.

Ms. McLean claims Dr. Blechl and Ms. Arwood "concocted" the situation with Ms. Tomkiewicz "in retaliation for [Ms.] McLean's unwillingness to be a party to their unprofessional behavior and ultimately to have [Ms.] McLean's employment terminated." Compl., ¶ 25. Ms. McLean filed a charge of sex discrimination with the EEOC and after receiving her right to sue letter filed suit in this court, claiming the Clinic and its employees violated 42 U.S.C. § 2000e *et seq.* by discriminating against her based on her sex and engaging in sexual harassment, which resulted in a hostile work environment and a retaliatory discharge. She also claims she was not compensated for vacation/personal time she earned prior to her firing. She seeks reinstatement or, in the alternative, compensatory and punitive damages, reimbursement for unpaid vacation/ personal time, interest, fees, and costs.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving

4

party even when the record as a whole is viewed in the light most favorable to the nonmoving party. <u>Turner v. J.V.D.B. & Assoc., Inc.</u>, 330 F.3d 991, 995 (7th Cir. 2003). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." <u>Butts v. Aurora Health Care, Inc.</u>, 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in her favor. <u>Lawrence v. Kenosha County</u>, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* <u>Schacht v. Wisconsin Dep't of Corr.</u>, 175 F.3d 497, 504 (7th Cir. 1999)).

DISCUSSION

*A. Sexual Discrimination*

Ms. McLean alleges that she was the victim of sexual discrimination in violation of 42 U.S.C. § 2000e *et seq.* while employed at Family Care Associates. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Clinic has moved for summary judgment on Ms. McLean's discrimination claim, arguing that Ms. McLean can't

5

prevail on her claim because she didn't suffer an adverse employment action and Title VII doesn't prohibit favoring a paramour.

Ms. McLean "can avert summary judgment . . . either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the . . . formula" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Rudin v. Lincoln Land Comm'y Coll., 420 F.3d 712, 719 (7th Cir. 2005) (internal quotations and citations omitted). Ms. McLean has chosen to proceed under the indirect method, which requires her to establish a prima facie case of gender discrimination by showing (1) she belongs to a protected class, (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) her employer treated at least one similarly-situated employee outside her protected class more favorably. Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005). If Ms. McLean meets her burden of establishing a prima facie case, "a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action" in question. Moser v. Indiana Dep't of Corr., 406 F.3d 895, 900 (7th Cir. 2005). If the Clinic articulates such a reason, Ms. McLean "must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination." Moser, 406 F.3d at 900-901. Throughout this burden-shifting, the ultimate burden of persuasion remains at all times with Ms. McLean. Moser, 406 F.3d at 901.

6

The Clinic first argues that Ms. McLean suffered no adverse employment action. Ms. McLean responds that "she alone was terminated as a result of her resistance to the 'paramour' situation created by [Dr.] Blechl *vis-a-vis* Ms. Arwood." Resp., at 23. Ms. McLean, however, hasn't argued or presented any evidence to establish that she suffered an adverse employment action that would violate Title VII; that is, an adverse employment action based on her gender. "The law of this circuit is that sex discrimination for Title VII purposes is limited to gender discrimination. [Ms. McLean] does not allege that she was prejudiced . . . because she was female but because the decision-maker preferred his paramour. [Ms. McLean] was in the same position as any other male or female employee who was not involved in a sexual relationship with one of the decisions-makers . . . . Consequently, [Ms. McLean] does not allege that she suffered an adverse employment because of her sex." <u>Piech v. Arthur Anderson & Co., S.C.</u>, 841 F. Supp. 825, 829 (N.D. Ill. 1994)*; see also* <u>Taken v. Oklahoma Corp. Comm'n</u>, 125 F.3d 1366, 1370 (10th Cir. 1997) (plaintiffs asserted employer was liable under Title VII "solely because a supervisor preselected his paramour for a [position] even though she was less qualified than plaintiff[s]. Taking plaintiffs' allegations as true, we conclude that they do not state a claim for relief under Title VII because they are based on a voluntary romantic affiliation, and not on any gender differences. Plaintiffs were in the same position as all men and all other women would have been--only Ms. Preston was considered for the promotion because of her special relationship with [the supervisor].");  <u>Candelore v. Clark County</u>

Sanitation Dist., 975 F.2d 588, 590 (9th Cir. 1992) ("[Plaintiff] alleges that one of her co-workers had an affair with one or two District supervisors and, as a result, this co-worker apparently received favorable treatment while [plaintiff] grew increasingly frustrated in her position. Because [plaintiff] failed to identify employment benefits or opportunities that she was entitled to but did not receive, she has not stated a prima facie case of discrimination under Title VII."). Ms. McLean hasn't established that she suffered an adverse employment action violative of Title VII.

The Clinic also argues Ms. McLean can't prevail on her discrimination claim because any favoritism shown to Ms. Arwood or other female employees at Family Care Associates doesn't violate Title VII. Ms. McLean responds that "she did suffer as a reason of the favoritism shown by the Clinic (and particuarly, [Dr.] Blechl) to Ms. Arwood." Resp., at 23. Ms. McLean stated in her deposition that Michelle Arwood and various other females (Carol Stefaniuk, Linda Walkey, Bev Bugonia, Jackie Rinehart, and Mary Roberts) were treated more favorably. According to Ms. McLean, because those women were friends with Ms. Arwood and Ms. Arwood was having an affair with Dr. Blechl, they all received preferential treatment in the workplace. But even if those women received preferential treatment, an employer's preferential treatment of others within the protected class isn't discrimination based on gender. *See* Schobert v. Illinois Dep't of Transp., 304 F.3d 725, 733 (7th Cir. 2002) ("Title VII does not . . . prevent employers from favoring employees because of personal relationships. Whether the employer grants employment

8

perks to an employee because she is a protegee, an old friend, a close relative or a love interest, that special treatment is permissible as long as it is not based on an impermissible classification."); <u>Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.</u>, 224 F.3d 701, 704 (7th Cir. 2000) ("The phrase in Title VII prohibiting discrimination based on sex means that it is unlawful to discriminate against women because they are women and against men because they are men."); Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, 1990 WL 1104702, *1 (E.E.O.C. Guidance, Jan. 12, 1990) ("An isolated instance of favoritism toward a 'paramour' (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders. A female charging party who is denied an employment benefit because of such sexual favoritism would not have been treated more favorably had she been a man nor, conversely, was she treated less favorably because she was a woman."). Ms. McLean must come forward with evidence demonstrating more favorable treatment of others based on a prohibited classification, something she hasn't done. The Clinic is entitled to summary judgment on her claim of sex discrimination.

### B. Sexual Harassment

Title VII also prohibits an employer from "requiring people to work in a discriminatory hostile or abusive environment." <u>Whittaker v. Northern Illinois Univ.</u>, 424 F.3d 640, 645 (7th Cir. 2005) (<i>quoting</i> <u>Harris v. Forklift Sys., Inc.</u>, 510

U.S. 17, 21 (1993)). To establish she was the victim of sexual harassment that created a hostile work environment, Ms. McLean must show she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical abuse of a sexual nature; the harassment was directed at her because of her sex; the harassment was severe or pervasive so as to unreasonably interfere with her work performance and create a hostile work environment; and there is a basis for employee liability. Whittaker v. Northern Illinois Univ., 424 F.3d at 645; Smith v. Northeastern Illinois Univ., 388 F.3d 559, 566 (7th Cir. 2004). The offensive conduct must be both subjectively and objectively so severe and pervasive as to alter the conditions of the victim's employment in a significant way and create an abusive working environment. Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 975 (7th Cir. 2004).

An employer is subject to vicarious liability for a hostile work environment created by a supervisor with immediate or successively higher authority over the employee. Doe v. Oberweis Dairy, 456 F.3d 704, 716 (7th Cir. 2006); McPherson v. City of Waukegan, 379 F.3d 430, 439 (7th Cir. 2004). Ms. McLean's allegations relate to actions of Dr. Blechl, and although neither of the parties addressed the issue, Dr. Blechl appears to have been Ms. McLean's supervisor and the court will assume so for purposes of this analysis.

The standard for determining an employer's liability for a hostile work environment was set forth by the Supreme Court in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998):

> An employer is subject to vicarious liability to a victimized employee
> for an actionable hostile environment created by a supervisor with
> immediate (or successively higher) authority over the employee. When
> no tangible employment action is taken, a defending employer may
> raise an affirmative defense to liability or damages, subject to proof
> by a preponderance of the evidence . . . . The defense comprises two
> necessary elements: (a) that the employer exercised reasonable care
> to prevent and correct promptly any . . . harassing behavior, and (b)
> that the plaintiff employee unreasonably failed to take advantage of
> any preventive or corrective opportunities provided by the employer
> or to avoid harm otherwise. . . . No affirmative defense is available,
> however, when the supervisor's harassment culminates in a tangible
> employment action, such as discharge, demotion, or undesirable
> reassignment.

*See also* Faragher v. Boca Raton, 524 U.S. 775, 807-808 (1998). An employer is

not subject to liability, even under the standard just quoted, "if the sexually

objectionable environment created by a supervisor does not rise to a level

actionable under Title VII." Fall v. Indiana Univ. Bd. of Trustees, 12 F. Supp. 2d

870, 876 (N.D. Ind. 1998) (*citing* Burlington Indus. v. Ellerth, 524 U.S. at 753-

754).

To prevail on her claim of a hostile work environment, Ms. McLean must

show that her work environment was both objectively and subjectively hostile.

Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005). "In other words, the

environment must be 'one that a reasonable person would find hostile or abusive,

and one that the victim in fact did perceive to be so.'" Smith v. Northeastern

Illinois Univ., 388 F.3d 559, 566 (7th Cir. 2004) (*quoting* Cerros v. Steel

Technologies, Inc., 288 F.3d 1040, 1045 (7th Cir. 2002)). At the summary

judgment stage, Ms. McLean has the burden of coming forward with evidence

11

sufficient to support a finding that because of her gender, her workplace was "permeated with discriminatory intimidation, ridicule and insult," Cooper-Schut v. Visteon Automotive Sys., 361 F.3d 421, 426 (7th Cir. 2004), that was sufficiently severe or pervasive to alter the conditions of her employment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004). In determining whether a plaintiff has met this standard, a court considers all the circumstances, including the frequency of the conduct; its severity; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's ability to complete her assigned duties. Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691-692 (7th Cir. 2005).

Ms. McLean bases her sexual harassment allegations on the following incidents: (1) Dr. Blechl told Ms. McLean he was going to be riding his bicycle to his son's athletic event and, while trying to hide behind the chart he was holding, he used a sexually provocative tone to ask her if she would meet him there [McLean Dep., at 145-146]; (2) on more than one occasion, Dr. Blechl leaned over Ms. McLean at her computer, touched her shoulder, and placed his hand over hers on the computer's mouse [McLean Dep., at 153]; and (3) when Ms. McLean complained to Dr. Blechl about Ms. Arwood's conduct—sitting on Ms. McLean's desk and shaking her hair over Ms. McLean's work area—Dr. Blechl became very angry and told Ms. McLean that if she ever did that again he would fire her [McLean Dep., at 154]. Ms. McLean maintains the behavior of Dr. Blechl and Ms.

12

Arwood was sexually-charged, intimidating conduct directed towards her because they knew she disapproved of their relationship.

Even assuming Ms. McLean found her workplace subjectively hostile, the nature of incidents of which she complains can't support a finding that those incidents created an environment that a reasonable person would find hostile or abusive. Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005). Only a hellish workplace is actionable. Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 977 (7th Cir. 2004). Ms. McLean doesn't explain how Dr. Blechl and/or Ms. Arwood made her workplace "hellish." *See* McPherson v. City of Waukegan, 379 F.3d 430, 438 (7th Cir. 2004) (distinguishing actionable hostile environment from workplace that is "merely unpleasant"); Baskerville v. Culligan Intern. Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (explaining that actionable hostile environment must be more than "merely unpleasant"). Ms. McLean hasn't alleged or argued that the incidents complained of unreasonably interfered with her ability to do her job. Ms. McLean's claim that Dr. Blechl engaged in the complained of acts to intimidate her because she disapproved of his relationship with Ms. Arwood isn't sufficient to establish that the incidents at issue were based on her gender.

Ms. McLean makes much of a statement she claims was made by Debbie Raybold, the Clinic's Chief Operating Officer. According to Ms. McLean, Ms. Raybold stated at a March 12, 2003 meeting that the environment at Family Care Associates was "hostile." Ms. Raybold denies having made such a statement, *see* Raybold Aff., ¶ 4, but even if Ms. Raybold did label Family Care Associates a

13

"hostile environment," Ms. McLean hasn't argued or presented any evidence that the "hostility" Ms. Raybold referenced was based on gender, especially in light of Ms. McLean's allegation that the statement was made at a meeting called to address complaints in a March 3, 2003 letter to Dr. Blechl, none of which involved any claims of sexual harassment or discrimination. *See* Compl., Exh. G.

"[R]elatively isolated instances of non-severe misconduct will not support a claim of a hostile environment." Whittaker v. Northern Illinois Univ., 424 F.3d 640, 646 (7th Cir. 2005); *see also* Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (noting that Title VII is not a code of general civility and simple teasing, offhand comments, and isolated incidents that are not extremely serious do not amount to actionable harassment). Examination of the totality of the conduct of which Ms. McLean complains convinces the court that that conduct wasn't sufficiently frequent, humiliating, or threatening so as to create a hostile environment or rise to the level of actionable harassment. *Compare* Moser v. Indiana Dep't of Corrections, 406 F.3d 895 (7th Cir. 2005) (no hostile work environment where male employee spoke down to female co-workers, made reference to plaintiff's "tits," told several new male employees to watch out because plaintiff likes good-looking men, commented on female job applicants' physical appearance, asked plaintiff if she had gotten a new set of legs, used profanity in his office, told a joke about a boy's anatomy, made an innuendo about his penis size when a dimension was mentioned by a female co-worker, told others, outside plaintiff's presence, that a female co-worker was running a whorehouse, and said

that a female co-worker "just needed a good f\*\*\*"); McPherson v. City of Waukegan, 379 F.3d 430 (7th Cir. 2004) (no hostile work environment where supervisor asked employee what color bra she was wearing, suggestively asked if he could make a "house call" when she called in sick, pointed to an outfit in a Victoria's Secret catalog and said she would look good in it, and pulled back her tank top to see what color bra she was wearing); Hilt-Dyson v. City of Chicago, 282 F.3d 456 (7th Cir. 2002) (holding plaintiff's allegations that supervisor rubbed her back, squeezed her shoulder, and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create an inference of a hostile work environment); Adusumilli v. City of Chicago, 164 F.3d 353 (7th Cir. 1998) (finding plaintiff's complaints of teasing, ambiguous comments about bananas, rubber bands, and low-neck tops, staring and attempts to make eye contact, and four isolated incidents where co-worker briefly touched plaintiff's arm, fingers, and buttocks did not constitute sexual harassment); *with* Valentine v. City of Chicago, 452 F.3d 670, 681-682 (7th Cir. 2006) ("severe and pervasive sexual harassment" found where supervisor "rubbed his crotch in front of [plaintiff] nearly every day; asked her on twenty occasions to leave her fiancé; asked her on dates between 30 and 40 times; made repeated comments about her "tits" and "ass"; and on six occasions rubbed [her] arms or shoulder"); McPherson v. City of Waukegan, 379 F.3d 430 (7th Cir. 2004) (hostile work environment existed once supervisor assaulted employee by putting his hand up her shirt and feeling her breasts and

sticking his hand down her pants and inserting his finger into her vagina); Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000) ("The physical, intimate, and forcible character of the acts at issue here persuades us that a factfinder could deem Hostetler's work environment hostile. . . . [H]er co-worker did not simply steal a quick kiss from her lips, but, holding her face in his hands, forced his tongue into her mouth. When Hostetler subsequently used her body to shield herself from an apparent repeat of that intrusion, [he] began to unfasten her bra, threatening to do so completely and stopping only when another employee entered the office.").

While employees "are entitled to a work environment that allows them to function effectively and to do the work they were hired to perform to the best of their ability without having to run a gauntlet of sexual abuse or face other forms of discrimination," Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11th Cir. 1999), Ms. McLean hasn't argued or come forward with evidence to demonstrate that the conduct at issue was based on her gender, unreasonably interfered with her work performance, or altered the conditions of her employment. Viewing the record in the light most favorable to Ms. McLean, the court concludes no reasonable jury could find Ms. McLean has demonstrated that the behavior of Dr. Blechl or Ms. Arwood was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S. Ct. 2342, 2354 (2004) (*quoting* Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)), or that the offensive

16

conduct created the "hellish" environment that would violate Title VII. <u>Whittaker</u> <u>v. Northern Illinois Univ.</u>, 424 F.3d 640, 645 (7th Cir. 2005). The Clinic is entitled to summary judgment on Ms. McLean's sexual harassment and hostile work environment claims.

### C. Retaliatory Discharge

Ms. McLain claims she was the victim of retaliation after she complained about discriminatory acts of Dr. Blechl and Ms. Arwood. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." <u>Miller v. American Family Mut. Ins. Co.</u>, 203 F.3d 997, 1007 (7th Cir. 2000).

Ms. McLean's retaliatory discharge claim requires her to demonstrate, first, that "(1) after lodging a complaint about discrimination, (2) only [s]he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [s]he was performing [her] job in a satisfactory manner." <u>Stone v. City of Indianapolis Pub. Utilities Div.</u>, 281 F.3d 640, 642 (7th Cir. 2002). Ms. McLean must demonstrate that the Clinic would not have taken the adverse action "but for" her protected expression. <u>Gleason v.</u> <u>Mesirow Financial, Inc.</u>, 118 F.3d 1134, 1146 (7th Cir. 1997). If Ms. McLean

establishes a prima facie case, the burden shifts to the Clinic to come forward

with a legitimate, non-retaliatory reason for its action; if the Clinic does so, the

burden shifts back to Ms. McLean to prove, by a preponderance of the evidence,

that the Clinic's proffered reasons were a pretext for discrimination. McKenzie v.

Illinois Dep't of Transp., 92 F.3d 473, 483 (7th Cir. 1996).  The Clinic maintains

Ms. McLean can't prevail on her retaliation claim because she didn't engage in any

statutorily protected expression; alternatively, the Clinic contends it has a

legitimate, non-discriminatory reason for Ms. McLean's discharge.

The Clinic first argues that Ms. McLean didn't engage in any statutorily

protected expression. Ms. McLean, though, insists she complained about her

treatment at the Clinic: she says she complained to Dr. Blechl when he

inappropriately touched her and also complained to Dr. Blechl when Ms. Arwood

leaned on, and shook her hair over, Ms. McLean's desk.

Speech that falls within Title VII's retaliation protections need not

specifically include the words "gender discrimination" or "sexual harassment,"

but it must include information sufficient to inform the employer that gender is

an issue – a claim of retaliation isn't implicated if an employer is unaware of any

complaints. Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007-1008

(7th Cir. 2000); *but see* Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027,

1037 (7th Cir. 1998) (finding notice not imputed to employer where victim

complained to harasser because "it is unreasonable to expect that [the harasser]

would transmit complaints about himself to [the employer's] management").

18

According to Ms. McLean, she made complaints to Dr. Blechl about his and Ms. Arwood's conduct. Because Ms. McLean's comments fall near the boundary of Title VII protection – her words might, depending on the common history of the persons between whom the words passed, convey a comprehensible complaint about gender discrimination (though the same words would not appear as a gender complaint outside the context of the speaker's and listener's common history) – the court declines to rest a summary judgment holding on this issue.

The Clinic argues in the alternative that its stated reason for Ms. McLean's discharge – that, based on her inappropriate comment to a Clinic patient, she wasn't performing her job satisfactorily – was legitimate and non-discriminatory. The Clinic has presented evidence that in June 2004, Dr. Blechl learned from Bernadette Tomkiewicz, one of his patients at the Clinic, that Ms. McLean had informed her that Dr. Blechl was having a sexual affair with Michele Arwood. Blechl Aff., ¶ 18. Dr. Blechl discussed the matter with Leanne Goble, the Clinic's Senior Director of Human Resources, and upon Ms. Goble's suggestion, Dr. Blechl asked Ms. Tomkiewicz to prepare a written statement about her conversation with Ms. McLean. Blechl Aff., ¶ 23; Goble Aff., ¶ 19. In that statement, Ms. Tomkiewicz confirmed that Ms. McLean told her Dr. Blechl and Ms. Arwood were having an affair and added that "[t]his office visit was not the first time [Ms. McLean] told me about Dr. Blechl & [Ms. Arwood,] it was on 2 other visits that [Ms. McLean] said things were going on between them." Blechl Aff., Exh. A. Ms. Tomkiewicz further says in her affidavit that her written statement "truthfully and accurately"

19

described what Ms. McLean said to her and that no one "coerced [her] into making the oral or written statements." Tomkiewicz Aff., ¶ 4-5.

The Clinic has submitted the affidavits of Dr. Blechl, Ms. Goble, and Ms. Arwood, in which they each state that they met with Ms. McLean when she returned from vacation and presented her with a copy Ms. Tomkiewicz's written statement (with Ms. Tomkiewicz's name and signature redacted). According to the affiants, Ms. McLean offered no explanation for making the comment to Ms. Tomkiewicz or any reason as to why Ms. Tomkiewicz would write the letter. The Clinic says that "because of [Ms. McLean's] untrue and inappropriate statements to Ms. Tomkiewicz," the decision was made to terminate her employment. Goble Aff., ¶ 23.

Because the Clinic has come forward with a legitimate and non-discriminatory reason for its action, the court will assume Ms. McLean has satisfied the requirements of a prima facie case, and examine whether she has demonstrated that the company's proffered reason is a pretext for discrimination. *See* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); Debs v. Northeastern Illinois Univ., 153 F.3d 390, 396 (7th Cir. 1998) (*citing* Aikens).

Ms. McLean responds that Ms. Tomkiewicz has no credibility and her statement is unreliable so the Clinic's reliance on Ms. Tomkiewicz as a witness

should be considered "a taint" on the Clinic's position. Ms. McLean first complains that at the meeting held just before her termination she was allowed only to "hastily view" Ms. Tomkiewicz's written statement. Ms. McLean says she didn't receive a copy of the written statement until her deposition, months after her discharge. The timing of Ms. McLean's receipt of a copy of Ms. Tomkiewicz's written statement doesn't negate the Clinic's claim that it believed Ms. McLean engaged in inappropriate behavior by telling Ms. Tomkiewicz about an affair between Dr. Blechl and Ms. Arwood.

Ms. McLean next says she find it curious that Clinic personnel redacted Ms. Tomkiewicz's signature from the written statement before showing it to her. She claims "the question of redaction raises this very plausible inference: the signature of Ms. Tomkiewicz was 'redacted' because she had not signed (or would not sign) a document which mis-characterized her last conversations with [Ms.] McLean." Resp., at 14. The record before the court doesn't support Ms. McLean's scenario. The Clinic's unrebutted evidence – a copy of Ms. Tomkiewicz's signed statement, dated June 29, 2004, and Ms. Tomkiewicz's affidavit in which she says her June 29 statement "truthfully and accurately" describes what Ms. McLean said to her – demonstrates that the inference advanced by Ms. McLean is not reasonable. *See* Gleason v. Mesirow Finan., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997) (court need not draw every conceivable inference, only reasonable ones).

Ms. McLean lastly claims Ms. Tomkiewicz isn't credible because, according to Ms. McLean, Ms. Tomkiewicz later said she was sorry for having written the

letter and explained that she wrote it because she felt she didn't have a choice. That Ms. Tomkiewicz may have been sorry she wrote the letter and may have written it only because she was asked to do so by Clinic personnel isn't "evidence of admitted coercion," as Ms. McLean alleges. Ms. McLean hasn't alleged or argued that Ms. Tomkiewicz recanted her original statement about what Ms. McLean told her about Dr. Blechl and Ms. Arwood. In fact, Ms. Tomkiewicz stated in her affidavit that "[n]o one . . . coerced [her] into making the oral and written statements." Tomkiewicz Aff., ¶ 5. Ms. Tomkiewicz's alleged apology to Ms. McLean doesn't negate the Clinic's claim that Ms. McLean engaged in inappropriate behavior by telling Ms. Tomkiewicz about an affair between Dr. Blechl and Ms. Arwood.

Ms. McLean hasn't challenged the statements of Ms. Tomkiewicz, Dr. Blechl, Ms. Goble, or Ms. Arwood relating to the incident at issue, nor has she produced any evidence to establish pretext on the part of the Clinic. Pretext is a "dishonest explanation . . . [that] means something worse than a business error; pretext means deceit used to cover one's tracks." Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002). Ms. McLean hasn't produced evidence to show that reason for the Clinic's decision to discharge her was a lie or had no basis in fact. Mills v. Health Care Serv. Corp., 171 F.3d 450, 458 (7th Cir. 1999).

"[R]egardless of whether it is correct in its beliefs, if an employer acted in good faith and with an honest belief, [the court] will not second-guess its decisions." Green v. National Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999); *see*

*also* <u>Debs v. Northeastern Illinois Univ.</u>, 153 F.3d 390, 396 (7th Cir. 1998) (even

a foolish, trivial, or even baseless decision, if honestly believed by the employer,

is not pretextual). Courts cannot impose on employers their own ideas of what

constitutes a prudent business decision; they "can assess only the question [of]

whether an employer has taken an action for a forbidden reason." <u>Leonberger v.</u>

<u>Martin Marietta Materials, Inc.</u>, 231 F.3d 396, 399 (7th Cir. 2000). The court must

determine on summary judgment whether Ms. McLean has produced evidence

from which a fact-finder could infer that the Clinic lied about its reasons for

discharging her. <u>Bell v. Environmental Protection Agency</u>, 232 F.3d 546, 551 (7th

Cir. 2000). She has not. The Clinic is entitled to summary judgment on Ms.

McLean's retaliation claim.

### D. Vacation/Personal Time Pay

Ms. McLean claims the Clinic owes her for paid time-off she earned before

her discharge. Ms. McLean hasn't alleged or argued that the non-payment of any

sums was based on gender discrimination or retaliation, but because the Clinic

has presented evidence in support of its request for summary judgment on this

claim, the court addresses the parties' arguments on the issue.

Ms. McLean maintains the Clinic hasn't paid her for certain amounts due

to her. She says her final pay stub from the Clinic shows a PTO balance of 421.14

hours, but she hasn't been paid that amount. Ms. McLean summarily concludes

that "the Clinic has, to date, provided no written evidence for the record regarding

why [Ms.] McLean should not be fully paid for all 421.14 hours of PTO documented in her last pay check summary." Resp., at 21. The court can't agree.

The Clinic says a data entry error resulted in an incorrect reporting of Ms. McLean's PTO balance and in support has set forth affidavits of Leanne Goble, the Clinic's Senior Director of Human Resources. Ms. Goble says prior to Ms. McLean's termination, she had accrued 208.48 hours of PTO, and during the week of her termination, Ms. McLean accrued an additional 4.18 hours of PTO, for a total of 212.16 hours. Goble Supp. Aff., ¶¶ 4-6; Goble Aff., ¶ 26. Ms. Goble further explains that

> The payroll clerk intended to enter 212.16 in a field on the computer so that Ms. McLean's PTO would be paid out with her final paycheck. Instead, she erroneously entered 212.16 in the wrong field – the field which holds the amount of PTO available. Accordingly, the 212.16 hours of PTO to be paid out were added to the pre-existing balance of 208.48 [hours], equaling 421.14 [hours]. Thus, the field for available PTO on Ms. McLean's last paycheck erroneously reflected 421.14 hours of PTO.

Goble Supp. Aff., ¶ 6. The Clinic insists the reporting of 421.14 hours of PTO was an error, and Ms. McLean instead was entitled to 212.66 hours of PTO, which amount, plus interest, has been paid to her in full.

Ms. McLean hasn't challenged Ms. Goble's statements on this issue or presented any evidence to discredit the Clinic's claim of error in originally reporting her PTO balance. Even though Ms. McLean reports she hasn't accepted the Clinic's tendered payment because "fact-finders will still need to make a determination as to this fact issue," Resp., at 22, "[t]he mere existence of an

24

alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant [here, Ms. McLean] must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). She hasn't done so. The Clinic is entitled to summary judgment on Ms. McLean's claim of underpayment of sums due to her.

CONCLUSION

Based on the foregoing, the motion for summary judgment of The South Bend Clinic, d/b/a Family Care Associates, [docket # 19] is GRANTED.

SO ORDERED.

ENTERED:   December 13, 2006

  /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

25